In re GAY et al.

(District Court, D. Massachusetts.   July 16, 1910.)

No. 14,188.

BANKRUPTCY (§ 145*)—PROPERTY PASSING TO TRUSTEE—RIGHTS OF ACTION—
"RIGHT OF ACTION ARISING FROM AN INJURY TO PROPERTY."
An action for deceit, brought by a bankrupt and pending at the time
of adjudication, to recover damages for false and fraudulent representa-
tions which induced him to purchase property at a price greater than its
value, was upon a "right of action arising from an injury to property,"
within Bankr. Act July 1, 1898, c. 541, § 70a (6), 30 Stat. 565 (U. S. Comp.
St. 1901, p. 3451), which passed to his trustee thereunder.
    [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 205, 230–
232, 234; Dec. Dig. § 145.*]

In the matter of E. H. Gay and others, bankrupts.   On petition by
bankrupts for review of referee's order authorizing and directing the
trustee to appear in and prosecute a pending suit begun by bankrupts.
Order affirmed.

Tyler & Young, for trustee.
George W. Anderson, for bankrupt.

DODGE, District Judge.   At the time of the bankruptcy an action
of tort was pending in the Massachusetts superior court, which the
bankrupts had brought against the firm of Tucker, Anthony & Co.
The declaration alleged that the bankrupts, who were dealers in stocks
and bonds, had been induced to buy certain bonds from the defend-
ants, who were in the same business, at prices greater than their value,
by false and fraudulent representations made by the defendants re-
garding facts materially affecting the value of the bonds.   Damages
were claimed for alleged losses to the plaintiff resulting from the
purchase.   The question to be decided is:   Were the bankrupts' rights
of action asserted in this suit "rights of action arising   *   *   *
from   *   *   *   injury to [the bankrupts'] property," so as to pass
to the trustee under section 70a (6) of the bankruptcy act (Act July
1, 1898, c. 541, 30 Stat. 565 [U. S. Comp. St. 1901, p. 3451]).

Assuming that the bankrupts were in fact induced, as their declara-
tion alleged, to pay $239,594.44 for bonds having no such real value, by
means of false and fraudulent representations such as the declaration
set forth, I think it may be said, as a matter of fair and reasonable
construction, that their right of action arose from injury to their prop-
erty.   If those were the facts, they lost by the deceit practiced upon
them money then belonging to them which might otherwise have been
available to meet their obligations.   This construction of clause 6 has
the support of a recent decision by the District Court for the North-
ern District of New York.   In re Harper, 175 Fed. 412.   A trustee
in bankruptcy was there allowed to set off against a claim for goods
sold and delivered a counterclaim for damages to the bankrupt, caused
by the creditor's deceit in connection with the sale.   The bankrupt's

claim for damages by the deceit was held to have passed to the trustee, because, if deceived as the bankrupt alleged, his money had thereby been lost and his estate diminished. It was held (page 421) that the trustee might therefore establish the claim for damages as a counterclaim before the referee, unless some other mode of establishing and liquidating it should be directed.

It is urged on the bankrupt's behalf that the court does not appear in Re Harper to have held the right of action for the deceit a right which may be properly described as a right arising from injury to the bankrupt's property, but to have held only that it passed to the trustee because made assignable by the New York Code. Such a right of action, it is said, is not assignable under the law of Massachusetts, and the decision is, therefore, of no authority here. But if the right of action dealt with in Re Harper belonged to the trustee only because assignable in New York, and not because a right arising from injury to the bankrupt's property, it belonged to him, not by virtue of subdivision 6 of section 70a, but by virtue of subdivision 5, or, in other words, because it was property transferable by the bankrupt, or which might have been sold under judicial process against him. See Remington, Bankruptcy, § 1019, p. 569. And the court expressly says in Re Harper, at page 418 of 175 Fed.:

"It is self-evident, I think, that rights of action for unliquidated damages for false and fraudulent representations, * * * whether assignable or not, are not regarded as property under subdivision 5."

The decision, as I understand it, holds the trustee entitled to the right of action only because subdivision 6 gives it to him. The definition of "injury to property" in the New York Code is discussed, because a definition of words used in subdivision 6, and the New York decisions bearing upon the Code definition are quoted only as interpreting and illustrating that definition. The Code can hardly have been supposed capable of making "injury to property" in subdivision 6 mean something in New York which it does not mean elsewhere. I am unable to see in this contention any reason for declining to follow In re Harper.

No other decision has been found which deals with this question as presented under the present bankruptcy act. Under the bankruptcy act of 1867 the rights of action belonging to a bankrupt which were to pass to his assignee were those "arising from an unlawful taking or detention or injury to his property." Rev. St. § 5046. The language used may be regarded as substantially identical, for the purposes of the question under consideration, with that of clause 6. Two decisions under that act are relied on by the bankrupts. They are In re Crockett, 2 Ben. 514, Fed. Cas. No. 3,402, and In re Brick, 4 Fed. 804. In the first of these cases the question was whether there were any assets in existence belonging to a partnership which had been dissolved. A suit which the partnership had brought to recover damages for fraudulently and deceitfully recommending a person, to whom it had sold goods, as worthy of trust and confidence, was held to be not within the description of the assets which pass to the assignee in bankruptcy. The court said:

"It is not a debt, or a security for a debt, or a right in equity, or a chose in action, or a right of action for property. Nor is it a right of action or a cause of action arising from contract. It is an action of tort for the fraud and deceit, and not an action on a contract."

The question was not further discussed. In the second case it was held, largely on the authority of the first, that a pending suit by the bankrupt for false and fraudulent representations as to its solvency, made by an officer of a company to which a firm, whereof the bankrupt was a member, had sold iron, taking a promissory note of the company in payment, was not a partnership asset, so that failure to include it in his schedules would vacate his discharge. The court said that the language of section 5046 did not include causes of action arising ex delicto, a statement which, as will appear, I must regard as too broad.

Another decision under the act of 1867 (Act March 2, 1867, c. 176, 14 Stat. 517), also relied on by the bankrupts, is Tufts v. Matthews, 10 Fed. 609, decided by the Circuit Court in this district. In that case the purchaser of a right of action originally belonging to a bankrupt, from his assignee, sold it to another who brought suit in his own name. The right of action was for deceit, and the deceit consisted in false representations inducing the surrender of certain bonds, deposited as security for the defendant's notes. The defendant's demurrer was sustained, partly on the ground that the plaintiff could not sue in his own name, and partly because of the doubt whether the claim was transferable by the assignee in bankruptcy, or by the purchaser from him, even if it ever passed to the assignee under the statute. But the court also undoubtedly held that an action for personal tort, "such as a fraudulent and deceitful recommendation of a person as worthy of credit whereby goods were obtained," was not a right of action which passed to the assignee under the statute. 10 Fed. 611.

The case last referred to did not, as has been stated, turn wholly upon the question whether or not the bankrupt's right of action passed to his assignee, nor do I think that I am required by what was said or decided in either case to hold that this right of action did not pass. That such a right was not assignable at common law does not seem to me to settle the question. In some states such rights of action have been made assignable by statute (as in the case of New York, above referred to); in other states, not. But the bankruptcy act, in providing among the rights of action for torts which shall and which shall not pass to the trustee, has adopted its own line of division, and this does not necessarily follow any of the distinctions observed elsewhere or for other purposes. It is recognized as a general principle in bankruptcy that the right of redress for wrongs to the bankrupt's person, feelings, or reputation does not belong to his creditors. A reason given is that the discretion as to whether such redress should be sought ought not to be intrusted to any one but the very person who has received the injury (Lowell, Bankruptcy, § 325); a reason which has no application where the redress sought is the recovery of money out of which the bankrupt has been cheated in a transaction entered into in the ordinary course of his business.

In such a case his money loss is properly described as resulting directly from the deceit, instead of being a result merely incidental, remote, or indirect. The damage is to be classed with damage to property, rather than with damage to the feelings or person, and the right to recover it, therefore, on broad grounds, with actions which pass to the assignee, rather than with those which do not pass. Lowell, Bankruptcy, § 305. In England an action for false representations "or other deceit sounding in damages" passes to the assignee, like actions for damage to property, real or personal. Lowell, Bankruptcy, § 307. And see, also, more recent statements of the English law in Robson, Bankruptcy (7th Ed.) 423, and Williams, Bankruptcy (8th Ed.) 211, 212.

As among actions of tort there are some which pass to the assignee in bankruptcy and some which do not, it would seem to be entirely possible that among actions for deceit there may be some which will pass and others which will not. As in Cutter v. Hamlen, 147 Mass. 471, 18 N. E. 397, 1 L. R. A. 429, an action for deceit against a lessor for false representations, inducing the plaintiff to hire from him an infected house whereby the plaintiff was made sick, the action was said to be "not for the deceit alone, the naked *injuria*, but for the damage caused by the deceit," and to be properly classed as an action for "damage to the person" within the meaning of Pub. St. Mass. 1882, c. 165, § 1, because "the nature of the damage sued for, not the nature of its cause, determines whether an action survives," so in this case, if the nature of the damage sued for be considered, rather than the mere deceit which was its cause, it may properly be described as arising from injury to property within the meaning of clause 6.

The bankrupts contend that an action cannot properly be so described unless it claims damage to some specific property, real or personal. This is based on the Massachusetts decisions construing the state statutes regulating the survival of actions. In those cases the question was whether the action could be called an action for "damage done to real or personal estate"—words which may well require a narrower construction than the language of clause 6. And, of course, the test here is not whether the action is one which survives under the Massachusetts law.

Lastly, it is urged on the bankrupts' behalf that they have resold the bonds, or some of them, to customers of their own, under representations made by them, on their own account, to the same effect as the representations of which they complain in the suit referred to, and that any recovery in that suit ought in justice to belong to them, rather than to the trustee, because they are not discharged in bankruptcy from such claims as the purchasers of the bonds from them assert against them. If all this is properly before the court, it is, of course, a sufficient answer that no such claims can be maintained against them, save for their own independent deceit or negligence in repeating the representations of which they complain.

The order of the referee is approved and affirmed.